SSP PARTNERS and Metro Novelties, Inc., Petitioners,

v.

GLADSTRONG INVESTMENTS (USA) CORPORATION, Respondent.

No. 05–0721.

Supreme Court of Texas.

Argued March 20, 2007.

Delivered Nov. 14, 2008.

Rehearing Denied Feb. 27, 2009.

446

Jennifer Rebecca Henderson, Fredrick F. "Rick" Rogers Jr., John Joseph Janssen, Porter, Rogers, Dahlman & Gordon, P.C., Corpus Christi, TX, Juan J. Hinojosa, Hinjosa & Powell, P.C., McAllen, TX, Roger W. Hughes, Scott T. Clark, Robert Barrett Ray, Adams & Graham, L.L.P., Harlingen, TX, for Petitioners.

Thomas C. Wright, Julia Leigh Kurtz, Michael A. Choyke, Lucy H. Forbes, Wright Brown & Close, LLP, Houston, TX, Jose E. Garcia, Francisco R. Villarreal, Garcia & Villarreal, LLP, Boone Channing Slusher, Slusher & Associates, McAllen, TX, for Respondent.

Ramon Garcia, Sonia I. Lopez, Eric Samuel Jarvis, Law Offices of Ramon Garcia, P.C., Edinburg, TX, Adolfo "Al" Alvarez, Law Office of Aldolfo Alvarez, McAllen, TX, Eloy Sepulveda, Fort Worth, TX, for Other Party In Interest.

Justice HECHT delivered the opinion of the Court.

In Texas, the seller of a defective product is subject to strict liability for damages the product causes even though the defect was not his fault, but he is generally entitled to indemnity from the manufacturer

by statute[1] and by common law.[2] Is he entitled to indemnity from an upstream supplier other than the manufacturer? Not, we hold, by statute, and not under the common law without showing that the upstream supplier was at fault. We also hold that corporations cannot be held liable for each other's obligations merely because they are part of a single business enterprise. For reasons different from the court of appeals',[3] we remand the case to the trial court for further proceedings.

# I

The parents of a five-year-old boy killed in a house fire sued SSP Partners and Gladstrong Investments (U.S.A.) Corp. on a claim of product liability, alleging that the fire was started by a WAX-brand disposable butane lighter with a defective child-resistant mechanism, sold by SSP and designed, manufactured, and marketed by Gladstrong USA. SSP sought indemnity from Metro Novelties, Inc., one of its suppliers of WAX lighters, and SSP and Metro both sought indemnity from Gladstrong USA. Before trial, the parents settled with Gladstrong USA and SSP for $1.6 million each, and SSP settled its indemnity claim against Metro for $800,000. Because SSP's and Metro's positions are aligned here, we refer to them collectively as SSP except when necessary to distinguish between them.

Gladstrong USA moved for summary judgment on SSP's indemnity claims. Statutory indemnity under chapter 82 of the Texas Civil Practice and Remedies Code is owed only by a manufacturer,[4] defined as "a designer, formulator, constructor, rebuilder, fabricator, producer, compounder, processor, or assembler of any product".[5] Gladstrong USA asserted that there was no evidence it manufactured WAX lighters or that it sold the lighter in question. In response, SSP argued that Gladstrong USA was a "producer" of WAX lighters within the ordinary meaning of that word and therefore a "manufacturer" under the statutory definition; that it was an apparent manufacturer with the same statutory duty; that it should be deemed to have been a manufacturer under industry standards and federal law; and that it should be liable with the actual manufacturer because they were part of a single business enterprise. As for common law indemnity, SSP argued that upstream distributors other than the manufacturer must indemnify downstream distributors. The parties' arguments thus raised six issues:

- Regarding statutory indemnity:

---

1. Tex. Civ. Prac. & Rem.Code § 82.002(a) ("A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable.").

2. *Aviation Office of Am., Inc. v. Alexander & Alexander of Tex., Inc.*, 751 S.W.2d 179, 180 (Tex.1988) (per curiam) ("The only remaining vestiges of common law indemnity involve purely vicarious liability or the innocent product retailer situation."); *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 432 (Tex.1984) ("Comparative causation does not affect the right of a retailer or other member of the marketing chain to receive indemnity from the manufacturer of the defective product when the retailer or other member of the marketing chain is merely a conduit for the defective product and is not independently culpable."); *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 819 (Tex.1984) ("An ... indemnity right survives in products liability cases to protect the *innocent* retailer in the chain of distribution.").

3. 169 S.W.3d 27 (Tex.App.–Corpus Christi 2005).

4. Tex. Civ. Prac. & Rem.Code § 82.002(a).

5. *Id.* § 82.001(4).

- Was Gladstrong USA a "manufacturer" of WAX-brand lighters as defined by the statute?
- Should Gladstrong USA be deemed by federal law and industry standards to have been a "manufacturer" as defined by statute?
- Is an entity liable as a manufacturer if it is part of a "single business enterprise" with a manufacturer?
- Is an apparent manufacturer of a product a "manufacturer" as defined by statute?
- Regarding common law indemnity:
- Must upstream sellers indemnify downstream sellers for product liability?
- Did Gladstrong USA sell the lighter that caused the accident?

The record establishes the following facts. WAX lighters are made in China by Tianjin Sico Lighters Company, Limited and exported exclusively by Gladstrong Hong Kong, both Chinese companies.[6] Gladstrong Hong Kong designed and patented the lighters' safety wheel and instructed Tianjin on construction of the lighters. Gladstrong Hong Kong has sometimes referred to itself as the manufacturer of the lighters for promotional purposes and in obtaining a Uniform Product Code required for sales in the United States.

Gladstrong Hong Kong owns Gladstrong USA, a California corporation, which imports, promotes, and distributes the lighters in the United States, sharing the profits with its parent. Of the two companies' employees, all but one belong to the same family, and Gladstrong Hong Kong holds Gladstrong USA out as its "branch office".

Metro, a Texas corporation, sells WAX lighters to SSP, a Texas general partnership, which retails them through its Circle K convenience stores. Circle K stores sell WAX lighters, identified by a unique Uniform Product Code that Gladstrong Hong Kong owns and by their distinctive labels, markings, and slender shape. The deceased child's aunt bought two lighters at one of SSP's Circle K stores. One of the lighters was allegedly destroyed in the fire. The other bore the WAX-brand UPC, label, and model number GIL–02 ("GIL" stands for Gladstrong Investments, Limited), and had the slim shape of a WAX-brand lighter.

After the child's death, Gladstrong USA sent out safety recall notices to purchasers of WAX lighters, stating that the "Consumer Product Safety Commission has tested these lighters and found they violate federal regulations pertaining to child safety [and] found the child safety mechanism in these lighters to be ineffective." No one else sent recall notices regarding WAX lighters. Gladstrong Hong Kong paid for the recall.

The trial court granted Gladstrong USA's motions for summary judgment, and SSP appealed. The court of appeals implicitly rejected SSP's arguments that Gladstrong USA was, or by federal law could be deemed to be, the manufacturer of the lighter for purposes of statutory indemnity.[7] The court held that an apparent manufacturer—which the court defined as "one who puts out, as its own product, chattel manufactured by another"[8]—could

6. SSP also sued Tianjin for indemnity, but the trial court severed those claims from this case. The trial court denied SSP's motions to join Gladstrong Hong Kong in the litigation.

7. The court of appeals mentioned both arguments but addressed neither. 169 S.W.3d at 36; *id.* at 42 (op. on reh'g).

8. *Id.* at 38.

be liable for common law indemnity[9] (an argument SSP did not make) but not for statutory indemnity,[10] and that there was some evidence Gladstrong USA was an apparent manufacturer.[11] The court also held that one entity cannot be liable as part of a single business enterprise if the other entities in the enterprise are not parties to the case.[12] The court reversed in part and remanded the case for further development of the record.[13] SSP and Gladstrong USA both petitioned this Court for review.

## II

We first consider whether Gladstrong USA is liable for indemnity under chapter 82 of the Texas Civil Practice and Remedies Code.

## A

■■■ Although a seller of a defective and unreasonably dangerous product may be liable, along with the manufacturer, for physical harm caused to the consumer,[14] chapter 82 requires the manufacturer to indemnify an innocent seller against losses arising out of a products liability action.[15] Section 82.002(a) imposes that obligation only on manufacturers, not on other sellers.[16] As already noted, a manufacturer is defined by section 82.001(4) as "a designer, formulator, constructor, rebuilder, fabricator, producer, compounder, processor, or assembler" of a product,[17] while a seller is defined by section 82.001(3) as someone who commercially distributes a product.[18] Thus, as we have previously observed, "all manufacturers are also sellers, but not all sellers are manufacturers." [19]

SSP argues that because Gladstrong USA imports WAX-brand lighters from Gladstrong Hong Kong in China, it "produces" them, as that word is commonly understood, and is therefore a manufacturer. We do not disagree that the dictionary meaning of a producer is broad enough to encompass distributors, but to equate them in the statute would destroy all distinction between manufacturers and sellers. If all sellers were manufacturers be-

9. *Id.* at 42.

10. *Id.* at 39–40.

11. *Id.* at 42.

12. *Id.* at 38; *id.* at 42–44 (op. on reh'g).

13. *Id.* at 42.

14. *E.g., Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 334–335 (Tex.1998) ("This Court has adopted the products liability standard set forth in section 402A of the Restatement (Second) of Torts. Section 402A states: (1) one who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.").

15. TEX. CIV. PRAC. & REM.CODE § 82.002(a).

16. *Id.*

17. *Id.* § 82.001(4) (" 'Manufacturer' means a person who is a designer, formulator, constructor, rebuilder, fabricator, producer, compounder, processor, or assembler of any product or any component part thereof and who places the product or any component part thereof in the stream of commerce.").

18. *Id.* § 82.001(3) (" 'Seller' means a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof.").

19. *General Motors Corp. v. Hudiburg Chevrolet, Inc.* 199 S.W.3d 249, 256 (Tex.2006).

cause all sellers are producers, then the indemnity obligation would be unlimited; everyone in the distribution chain would owe everyone else indemnity, contrary to the statute's stated purpose of requiring indemnity only by manufacturers. The word "producer" cannot be read to confound the statute; rather, the word's meaning in the statutory definition is confined by the words that surround it: "designer, formulator, constructor, rebuilder, fabricator, ... compounder, processor, or assembler"[20]—that is, someone involved in making a product.[21] Gladstrong USA imports lighters; it has nothing to do with making them. We have no difficulty concluding that Gladstrong USA was not a manufacturer for purposes of statutory indemnity.

**B**

■ SSP argues that the Federal Consumer Product Safety Act defines a "manufacturer" to include an importer,[22] reflecting a common commercial understanding, and so should section 82.001(4). But the purpose of that Act is to protect consumer safety,[23] not to adjust liabilities among distributors. Imposing safety standards on everyone that introduces a product into the American marketplace, importers and manufacturers alike, is obviously important to consumer safety. Imposing a no-fault indemnity obligation only on import-

ers and not other sellers is certainly not essential to a fair allocation of responsibility. The fact that Congress has chosen to impose product safety requirements on importers in no way suggests that the Legislature has chosen to require importers to indemnify other sellers from products liability actions. As different as the two statutory schemes are, the federal Act's treatment of importers as manufacturers suggests nothing about the scope of the indemnity obligation under chapter 82.

**C**

■ SSP argues that even if Gladstrong USA was not a manufacturer of WAX-brand lighters, it is nevertheless liable for statutory indemnity because it and Gladstrong Hong Kong, which did manufacture the lighters, operated as a "single business enterprise". The single business enterprise liability theory on which SSP relies was put forward by the court of appeals in *Paramount Petroleum Corp. v. Taylor Rental Center.*[24] There the court stated:

[W]hen corporations are not operated as separate entities but rather integrate their resources to achieve a common business purpose, each constituent corporation may be held liable for debts incurred in pursuit of that business purpose. Factors to be considered in determining whether the constituent cor-

---

**20.** Tex. Civ. Prac. & Rem.Code § 82.001(4).

**21.** *See Hilco Elec. Coop. v. Midlothian Butane Gas Co.,* 111 S.W.3d 75, 81 (Tex.2003) ("[T]he rule of *ejusdem generis* ... provides that when words of a general nature are used in connection with the designation of particular objects or classes of persons or things, the meaning of the general words will be restricted to the particular designation.").

**22.** 15 U.S.C. § 2052(a)(11) (2006) ("The term 'manufacturer' means any person who manufactures or imports a consumer product.").

**23.** *Id.* § 2051(b) ("The purposes of this chapter are (1) to protect the public against unreasonable risks of injury associated with consumer products; (2) to assist consumers in evaluating the comparative safety of consumer products; (3) to develop uniform safety standards for consumer products and to minimize conflicting State and local regulations; and (4) to promote research and investigation into the causes and prevention of product-related deaths, illnesses, and injuries.").

**24.** 712 S.W.2d 534 (Tex.App.–Houston [14th Dist.] 1986, writ ref'd n.r.e.).

porations have not been maintained as separate entities include but are not limited to the following: common employees; common offices; centralized accounting; payment of wages by one corporation to another corporation's employees; common business name; services rendered by the employees of one corporation on behalf of another corporation; undocumented transfers of funds between corporations; and unclear allocation of profits and losses between corporations.[25]

SSP asserts that it offered evidence of all these factors.[26]

SSP does not contend that Gladstrong USA and Gladstrong Hong Kong are jointly liable as participants in what Texas law calls a joint venture or joint enterprise[27] (not to be confused with single business enterprise), the essential ele-

ments of which are an agreement, a common purpose, a community of pecuniary interest, and an equal right of control.[28] Nor does SSP contend that liability should be imposed on Gladstrong USA by disregarding its structure as a separate corporation—that is, by piercing the corporate veil or holding it to be the alter ego of Gladstrong Hong Kong. We have held that the limitation on liability afforded by the corporate structure[29] can be ignored only "when the corporate form has been used as part of a basically unfair device to achieve an inequitable result".[30] Examples are when the corporate structure has been abused to perpetrate a fraud, evade an existing obligation, achieve or perpetrate a monopoly, circumvent a statute, protect a crime, or justify wrong.[31] In some instances, the imposition of liability is limited by statute to situations involving actual

25. *Id.* at 536.

26. SSP summarizes its evidence as follows. Kin Chung Li and his wife and daughter own Gladstrong Hong Kong, which owns Gladstrong USA, whose sole purpose is to promote Gladstrong Hong Kong's business in the United States. Li is president of both companies and approves all their decisions, including hiring and salaries. He considers Gladstrong USA a branch office of Gladstrong Hong Kong, and he considers the United States his home. Gladstrong USA's employees are paid by Gladstrong Hong Kong, and all except one is part of the Li family. The two companies share accounting functions, and funds are transferred between them, though the allocation of revenues and profits is unclear. Gladstrong Hong Kong funded the WAX lighter recall.

The court of appeals stated that Gladstrong USA held itself out as the manufacturer of WAX lighters. 169 S.W.3d at 38–39. Gladstrong USA contends that this misstates the record, that only Gladstrong Hong Kong held itself out as the manufacturer.

27. *See Texas Dep't. of Transp. v. Able,* 35 S.W.3d 608, 613 (Tex.2000) ("Joint enterprise liability makes each party thereto the agent of

the other and thereby to hold each responsible for the negligent act of the other." (internal quotation marks omitted)); *Truly v. Austin,* 744 S.W.2d 934, 937 (Tex.1988) ("A joint venturer is jointly and severally liable for joint venture debts and obligations.").

28. *Able,* 35 S.W.3d at 613; *Blount v. Bordens, Inc.,* 910 S.W.2d 931, 933 (Tex.1995); *Triplex Communc'ns, Inc. v. Riley,* 900 S.W.2d 716, 718 (Tex.1995); *Shoemaker v. Estate of Whistler,* 513 S.W.2d 10, 14–17 (Tex.1974) (adopting RESTATEMENT (SECOND) OF TORTS § 491 cmt. c (1965)).

29. *See, e.g., Willis v. Donnelly,* 199 S.W.3d 262, 271 (Tex.2006) ("A bedrock principle of corporate law is that an individual can incorporate a business and thereby normally shield himself from personal liability for the corporation's contractual obligations."); *Castleberry v. Branscum,* 721 S.W.2d 270, 271 (Tex. 1986) ("The corporate form normally insulates shareholders, officers, and directors from liability for corporate obligations....").

30. *Castleberry,* 721 S.W.2d at 271.

31. *Id.* at 272.

fraud.[32]

The "single business enterprise" liability theory on which SSP relies does not entail the level of agreement required for joint enterprise liability or the abuse required before the law disregards the corporate structure to impose liability. The theory SSP advocates applies whenever two corporations coordinate operations and combine resources in pursuit of the same business purpose. We have never approved of imposing joint liability on separate entities merely because they were part of a single business enterprise,[33] and we have pointed out that an issue exists "whether a theory of 'single business enterprise' is a necessary addition to Texas law regarding the theory of alter ego for disregarding corporate structure".[34]

As the only authority for its single business enterprise liability theory, the *Paramount Petroleum* court cited two cases, *Murphy Bros. Chevrolet Co. v. East Oakland Auto Auction*[35] and *Allright Texas, Inc. v. Simons*.[36] In Murphy Bros., the court of civil appeals held that the plaintiff had established the liability of the defendant corporation as opposed to the defendant's predecessor, and that in any event

the two corporations were engaged in a joint venture and thus jointly liable.[37] This was sufficient to affirm the trial court's judgment, but the court digressed. Citing our opinion in *State v. Lone Star Gas Co.*[38] for the "well settled [rule] that courts will look through the forms to the realities of the relationship between two or more corporations to determine whether each is a separate entity or corporation, or what their relationship might be",[39] the court then quoted from our opinion:

> The fact that separate corporate entities were formed which represent different departments of the integrated but single business enterprise does not affect the question, because the court must look beyond the corporate form to the purpose of the unified organization and to the officials who are identified with that purpose.[40]

This statement, true on its face, was taken out of context. "The question" to which we referred in *Lone Star* was not whether two entities engaged in a single business enterprise were jointly liable for each other's obligations, but whether a natural gas pipeline company whose business was integrated with local distribution

---

**32.** Tex. Bus. Corp. Act art. 2.21 (expires Jan. 1, 2010); Tex. Bus. Orgs.Code § 21.223 (effective Jan. 1, 2006).

**33.** *National Plan Adm'rs, Inc. v. National Health Ins. Co.*, 235 S.W.3d 695, 704 (Tex. 2007) ("We do not reach the question of, and express no opinion on, whether the single-business enterprise theory is a viable doctrine to pierce the corporate veil of a party...."); *PHC–Minden, L.P. v. Kimberly—Clark Corp.*, 235 S.W.3d 163, 173 (Tex.2007) (referring to single business enterprise as "a theory we have never endorsed"); *Southern Union Co. v. City of Edinburg*, 129 S.W.3d 74, 86 (Tex. 2003) (noting that this Court "has never considered the 'single business enterprise' concept in any detail").

**34.** *Southern Union Co.*, 129 S.W.3d at 87.

**35.** 437 S.W.2d 272 (Tex.Civ.App.El Paso, 1969, writ ref'd n.r.e.).

**36.** 501 S.W.2d 145 (Tex.Civ.App.–Houston [1st Dist.] 1973, writ ref'd n.r.e.).

**37.** 437 S.W.2d at 275.

**38.** 86 S.W.2d 484 (Tex.Civ.App.–Austin 1935, writ ref'd), *rev'd and remanded*, 304 U.S. 224, 58 S.Ct. 883, 82 L.Ed. 1304 (1938), *op. on remand*, 129 S.W.2d 1164 (Tex.Civ.App.–Austin 1939), *rev'd and remanded*, 137 Tex. 279, 153 S.W.2d 681 (1941).

**39.** *Murphy Bros. Chevrolet Co.*, 437 S.W.2d at 276.

**40.** *Id.* (quoting 86 S.W.2d at 492).

companies serving Texas cities was subject to regulation by the Railroad Commission even though the pipeline cut across Oklahoma on its way from Texas gas fields to Texas consumers.[41] We concluded, not surprisingly, that the pipeline could not use the interstate aspect of its business to shield its affiliates' intrastate operations from regulation.[42] In any event, we said, the companies' business affiliations were immaterial because the pipeline company was not engaged in interstate commerce.[43] We went on to explain in *Lone Star* that corporations could be operated in such a way that they could no longer be regarded as distinct entities,[44] but we did not suggest that unity of enterprise would alone justify disregarding corporate structures.

In *Allright*, the other case on which the *Paramount Petroleum* court relied, the plaintiff sued two corporations with "Allright" in their names and obtained a judgment against both for personal property taken from his car, which he had parked at an Allright parking lot.[45] On appeal, the defendants argued for the first time that the trial court's judgment failed to distinguish between them. The court of civil appeals held that their complaint had not been preserved for appeal but went on to reject it.[46] Based on evidence that the defendants did business under the same Allright trade style and assumed name, and that they and three other corporations shared bookkeeping services and employees and had all guaranteed payment of the judgment (for $1,444.05), the appellate court concluded that "the trial court was justified in looking beyond corporate form and in determining, as a matter of law, that the relationship between the corporations constituted in reality a single business enterprise."[47] The only authority the court cited was *Murphy Bros.*

In *Paramount Petroleum*, the plaintiff rented equipment to a business that identified itself as "Paramount" to be used in repairing a ship.[48] When the bills went unpaid, the plaintiff sued Paramount Petroleum Corp., which denied responsibility, contending that the responsible party was Paramount Steamship Co., Ltd., another entity owned by the same shareholder. The court of appeals affirmed the judgment against Paramount Petroleum on the ground that the two corporations were operated as a single business enterprise and not as separate entities.[49] The court summarized the evidence as follows:

> The same shareholder owned all of the stock in both companies. The two companies operated from the same Houston office. They used the same telephone number and the same post office box. Both companies paid funds ... for repair work on the [ship]. The employees of both companies referred to both companies as "Paramount". Petroleum transferred funds, with no ledger entries, to a checking account over which an employee of Steamship was signatory. The president of Steamship testi-

---

41. 86 S.W.2d at 490.

42. *Id.* at 495.

43. *Id.*

44. *Id.* at 492; *accord Humble Oil & Ref. Co. v. Railroad Comm'n*, 133 Tex. 330, 128 S.W.2d 9, 11–12 (1939).

45. 501 S.W.2d 145, 146–147 (Tex.Civ.App.–Houston [1st Dist.] 1973, writ ref'd n.r.e.).

46. *Id.* at 149–150.

47. *Id.* at 150.

48. 712 S.W.2d 534, 535 (Tex.App.–Houston [14th Dist.] 1986, writ ref'd n.r.e.).

49. *Id.* at 536–537.

fied that assets of Petroleum were seized when the [ship] was seized. All accounting for the two companies was performed at the Houston office by an employee paid by Petroleum. Finally, Petroleum failed to produce, in response to discovery requests, any corporate records of either corporation. This evidence demonstrates that the corporations were not operated as separate entities.

The evidence also shows that the corporations shared the goal of restoring the [ship]. Petroleum funded the bank account from which the restoration expenditures were paid. Petroleum's employees performed the accounting for the restoration. Steamship's employees performed the actual reconditioning work and hired subcontractors.[50]

The court held that the judgment against Paramount Petroleum could also be based on the theory of partnership by estoppel, noting that the two Paramounts had made no effort to distinguish themselves in renting equipment from the plaintiff.[51]

The bare mention of single business enterprise liability in *Murphy Bros.* and *Allright* was inadequate to support the multifactored theory set out in *Paramount Petroleum*, and while other courts have applied the theory, none to our knowledge has found sound jurisprudential footing for the theory. Importantly, in this Court's opinion in *Castleberry v. Branscum*,[52] decided shortly after *Paramount Petroleum*, we comprehensively reviewed the bases for imposing liability despite the corporate structure and did not include single business enterprise among them:

We disregard the corporate fiction, even though corporate formalities have been observed and corporate and individual property have been kept separately, when the corporate form has been used as part of a basically unfair device to achieve an inequitable result. Specifically, we disregard the corporate fiction:

(1) when the fiction is used as a means of perpetrating fraud;

(2) where a corporation is organized and operated as a mere tool or business conduit of another corporation;

(3) where the corporate fiction is resorted to as a means of evading an existing legal obligation;

(4) where the corporate fiction is employed to achieve or perpetrate monopoly;

(5) where the corporate fiction is used to circumvent a statute; and

(6) where the corporate fiction is relied upon as a protection of crime or to justify wrong.[53]

Each example involved an element of abuse of the corporate structure, including example (2), alter ego; in that situation, we specifically stated, "holding only the corporation liable would result in injustice."[54] Abuse and injustice are not components of the single business enterprise theory stated in *Paramount Petroleum*. The theory applies to corporations that engage in any sharing of names, offices, accounting, employees, services, and finances. There is nothing abusive or unjust about any of these practices in the abstract. Different entities may coordinate their activities without joint liability.

---

50. *Id.*

51. *Id.* at 537.

52. 721 S.W.2d 270 (Tex.1986).

53. *Id.* at 271–272 (footnotes and citations omitted).

54. *Id.* at 272.

■ Creation of affiliated corporations to limit liability while pursuing common goals lies firmly within the law and is commonplace. We have never held corporations liable for each other's obligations merely because of centralized control, mutual purposes, and shared finances. There must also be evidence of abuse, or as we said in *Castleberry,* injustice and inequity. By "injustice" and "inequity" we do not mean a subjective perception of unfairness by an individual judge or juror; rather, these words are used in *Castleberry* as shorthand references for the kinds of abuse, specifically identified, that the corporate structure should not shield—fraud, evasion of existing obligations, circumvention of statutes, monopolization, criminal conduct, and the like. Such abuse is necessary before disregarding the existence of a corporation as a separate entity. Any other rule would seriously compromise what we have called a "bedrock principle of corporate law"[55]—that a legitimate purpose for forming a corporation is to limit individual liability for the corporation's obligations.

■ Disregarding the corporate structure involves two considerations. One is the relationship between two entities, which can be assessed using factors like those listed by the court in *Paramount Petroleum.* The other consideration is whether the entities' use of limited liability was illegitimate. On this issue the *Paramount Petroleum* factors are almost entirely irrelevant. That determination must be based on a careful evaluation of the policies supporting the principle of limited liability.

In *Castleberry,* we held that the corporate structure could be disregarded on a showing of constructive fraud, even without actual fraud.[56] The Legislature has since rejected that view in certain cases. Article 2.21 of the Texas Business Corporation Act takes a stricter approach to disregarding the corporate structure:

A. A holder of shares, an owner of any beneficial interest in shares, or a subscriber for shares whose subscription has been accepted, or any affiliate thereof or of the corporation, shall be under no obligation to the corporation or to its obligees with respect to:

\* \* \*

(2) any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that the holder, owner, subscriber, or affiliate is or was the alter ego of the corporation, or on the basis of actual fraud or constructive fraud, a sham to perpetrate a fraud, or other similar theory, unless the obligee demonstrates that the holder, owner, subscriber, or affiliate caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder, owner, subscriber, or affiliate; or

(3) any obligation of the corporation on the basis of the failure of the corporation to observe any corporate formality, including without limitation: (a) the failure to comply with any requirement of this Act or of the articles of incorporation or bylaws of the corporation; or (b) the failure to observe any requirement prescribed by this Act or by the articles of incorporation or bylaws for

---

55. *Willis v. Donnelly,* 199 S.W.3d 262, 271 (Tex.2006) ("A bedrock principle of corporate law is that an individual can incorporate a business and thereby normally shield himself from personal liability for the corporation's contractual obligations.").

56. 721 S.W.2d at 273.

acts to be taken by the corporation, its board of directors, or its shareholders.

B. The liability of a holder, owner, or subscriber of shares of a corporation or any affiliate thereof or of the corporation for an obligation that is limited by Section A of this article is exclusive and preempts any other liability imposed on a holder, owner, or subscriber of shares of a corporation or any affiliate thereof or of the corporation for that obligation under common law or otherwise, except that nothing contained in this article shall limit the obligation of a holder, owner, subscriber, or affiliate to an obligee of the corporation when:

(1) the holder, owner, subscriber, or affiliate has expressly assumed, guaranteed, or agreed to be personally liable to the obligee for the obligation; or

(2) the holder, owner, subscriber, or affiliate is otherwise liable to the obligee for the obligation under this Act or another applicable statute.[57]

The single business enterprise liability theory is fundamentally inconsistent with the approach taken by the Legislature in article 2.21.

■ Accordingly, we hold that the single business enterprise liability theory set out in *Paramount Petroleum* will not support the imposition of one corporation's obligations on another. Although Gladstrong USA was entitled to summary judgment on this issue, for reasons explained below, we conclude that the case must be remanded to the trial court for further proceedings. SSP will be free to assert a valid theory for requiring Gladstrong USA to meet any indemnity obligation Gladstrong Hong Kong may have.

**D**

Finally, SSP argues that even if Gladstrong USA was not the actual manufacturer of the WAX-brand lighters, it is liable for statutory indemnity as the apparent manufacturer. SSP relies on section 400 of the *Restatement (Second) of Torts,* which states: "One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer."[58]

■ We have never considered whether section 400 correctly states the law of Texas, and we need not do so here. Nor need we consider whether the rule in section 400 should apply to claims for indemnity or only consumer claims for damages. As we have already observed, the indemnity obligation created by chapter 82 is limited to manufacturers, a defined term. The statutory definition is quite specific and does not include apparent manufacturers. Including apparent manufacturers in the definition would extend the indemnity obligation to any seller, and perhaps a non-seller, who "put out" a product as his own. We can find no basis for reading the statute so broadly.

---

57. Tex. Bus. Corp. Act art. 2.21 (expires Jan. 1, 2010). Sections A and B of this article, after a legislative reorganization of the statutes governing business entities effective January 1, 2006, were recodified in substantially similar form in Tex. Bus. Orgs.Code § 2.223, and §§ 21.224–.225, respectively. Act of May 29, 2003, 78th Leg., R.S., ch. 182, §§ 1, 2, 2003 Tex. Gen. Laws 267, 427, 595.

58. Restatement (Second) of Torts § 400 (1965); *see also* Restatement (Third) of Torts: Products Liability § 14 (1998) ("One engaged in the business of selling or otherwise distributing products who sells or distributes as its own a product manufactured by another is subject to the same liability as though the seller or distributor were the product's manufacturer.").

Because the parties have confined their arguments regarding section 400 to statutory indemnity claims, we disapprove of the court of appeals' discussion of the applicability of section 400 to common law indemnity claims.

## III

We next consider whether Gladstrong USA is liable for common law indemnity.

## A

 By its terms, chapter 82 is "in addition to any duty to indemnify established by law, contract, or otherwise"[59] and thus does not preclude common law indemnity. The common law requires a manufacturer who is liable for a product defect to indemnify a seller who is not independently culpable against any liability the seller incurs.[60] SSP argues that an upstream seller owes the same obligation to innocent downstream sellers that a manufacturer does. For this reason, SSP contends, it is entitled to indemnity from Gladstrong USA even if Gladstrong USA did not manufacture WAX lighters.

 But a manufacturer's indemnity obligation is based on its responsibility for the product defect.[61] A seller is also responsible for injuries to the consumer, just as the manufacturer is, but the seller's liability is not based on fault; it is imputed by law.[62] SSP would impose an indemnity obligation on an innocent upstream seller. This would be at odds with what we have called "the fundamental principle underlying indemnity law", that:

> [g]enerally speaking, a person who, without personal fault, has become subject to tort liability for the unauthorized and *wrongful* conduct of another, is entitled to full indemnity from the other for expenditures properly made to discharge the liability. We noted in *City of San Antonio v. Talerico,* 98 Tex. 151, 81 S.W. 518, 520 (1904), that it is a "general principle[ ] of law [that an] active *wrongdoer* may be made to indemnify one who has been subjected to, or is sought to be held liable for, damage through his *wrong.*"[63]

This principle does not support the imposition of an indemnity obligation on someone innocent of wrongdoing. SSP argues that an importer of a defective product is at fault for facilitating entry of the product into this country. But even if we assume this is true, any such fault is not the kind of actionable wrongdoing on which common law indemnity is predicated.

Accordingly, SSP is not entitled to common law indemnity without proof that

---

**59.** TEX. CIV. PRAC. & REM.CODE § 82.002(e)(2).

**60.** *General Motors Corp. v. Hudiburg Chevrolet, Inc.,* 199 S.W.3d 249, 255 (Tex.2006) ("Under the common law, a person is entitled to indemnity for products liability only if his liability is entirely vicarious and he is not himself independently culpable. The indemnitor must be liable or potentially liable for the product defect, and his liability must be adjudicated or admitted." (footnotes omitted)).

**61.** *Owens & Minor, Inc. v. Ansell Healthcare Prods., Inc.,* 251 S.W.3d 481, 486 (Tex.2008) ("The rationale behind the common law concept of indemnification is that a party exposed

to liability solely due to the wrongful act of another should be permitted to recover from the wrongdoer.").

**62.** *McKisson v. Sales Affiliates, Inc.,* 416 S.W.2d 787, 789 (Tex.1967) ("The rule ... of strict liability [makes] the seller subject to liability to the user or consumer even though he has exercised all possible care in the preparation and sale of the product.") (quoting RESTATEMENT (SECOND) OF TORTS § 402A, cmt. a (1965)).

**63.** *Humana Hosp. Corp. v. American Med. Sys., Inc.,* 785 S.W.2d 144, 145 (Tex.1990) (citation omitted).

Gladstrong USA was responsible for the defective condition of the WAX lighters. SSP did not establish such responsibility as a matter of law, but Gladstrong USA did not move for summary judgment for want of such evidence. The case must therefore be remanded for further consideration of the issue.

**B**

█ Gladstrong USA did move for summary judgment on the ground that there is no evidence that it sold the actual lighter that caused the fire in this case. It argues that the lighter at issue was either imported by someone else or was a counterfeit. SSP's evidence that Gladstrong USA imports WAX-brand lighters and knows of no one else who does is sufficient to raise an issue of fact precluding summary judgment for Gladstrong USA on this ground.

\* \* \*

Though we do not entirely agree with the court of appeals' reasoning, we do agree that Gladstrong USA was entitled to summary judgment on SSP's claim for statutory indemnity but not on SSP's claim for common law indemnity. Accordingly, the court of appeals' judgment remanding the case to the trial court for further proceedings is affirmed.