**BIG EASY CAJUN CORPORATION,** Big Easy Cajun—Houston, Inc., Big Easy Cajun—Ridgmar, Inc., Big Easy Cajun—San Antonio, Inc., Big Easy Cajun—Stonebriar, Inc., Big Easy Cajun—Valley View, Inc., Big Easy Cajun Management Corporation, and Florida Operations Corporation, Appellants,

v.

**DALLAS GALLERIA LIMITED,** Appellee.

No. 05–07–01523–CV.

Court of Appeals of Texas, Dallas.

July 28, 2009.

Rehearing Overruled Sept. 23, 2009.

Carol E. Farquhar, Alan S. Loewinsohn, Loewinsohn Flegle Deary, L.L.P., Dallas, TX, Charles M. Johnston, Johnston & Hammond, Jacksonville, FL, for Appellant.

Randall K. Lindley, Jeffrey Scott Lowenstein, Joseph L. Parks, Bell Nunnally & Martin, LLP, Dallas, TX, for Appellee.

Before Justices BRIDGES, O'NEILL, FITZGERALD.

## OPINION

Opinion By Justice FITZGERALD.

Dallas Galleria Limited sued appellants on two imputed liability theories: limited partnership and single business enterprise. The trial court granted appellants a directed verdict on the limited partnership theory, but Dallas Galleria Limited obtained a jury verdict—and the trial court signed a judgment—on the single business enterprise theory. Both parties appealed the judgment on multiple grounds. For the reasons discussed below, we reverse the trial court's judgment and render judgment that Dallas Galleria Limited take nothing by its suit against appellants.

### BACKGROUND

In 1999, Dallas Galleria Limited ("Galleria") entered into a lease with Big Easy Cajun–Dallas, Inc. ("BEC Dallas"), whereby BEC Dallas would operate a food-court restaurant in the Galleria mall for ten years. In 2002, BEC Dallas defaulted on the lease and abandoned the premises. Galleria sued BEC Dallas for breach of the lease. When BEC Dallas failed to answer, Galleria obtained a default judgment in the amount of $459,732.17, plus attorney's fees, costs, and interest (the "Default Judgment"). The Default Judgment was not satisfied.

In 2003, Galleria brought a new suit against appellants seeking to enforce the Default Judgment against them under the single business enterprise theory. Appel-

lants include other food-court restaurants, an operating company, and a management company; all are organized as independent corporations. Subsequently, Galleria amended its petition to allege an implied partnership among appellants and BEC Dallas as another reason why they should be required to satisfy the Default Judgment. The case was tried to a jury, but after Galleria's case in chief, the trial court directed a verdict against Galleria on its implied partnership claim. The jury returned a verdict in favor of Galleria on the single business enterprise claim and assessed Galleria's damages at $283,112.38. The trial court's judgment included those damages, plus attorney's fees, costs, and interest.

Both parties appealed, raising multiple issues. However, during the pendency of the appeal, the Texas Supreme Court issued an opinion on the theory of single business enterprise that controls this appeal. *See SSP Partners v. Gladstrong Investments (USA) Corp.,* 275 S.W.3d 444 (Tex.2008). We address appellants' first issue on the viability of the theory of single business enterprise in light of *SSP Partners.* And because we conclude *SSP Partners* requires us to reverse the trial court's judgment on the single business enterprise theory of liability, we review Galleria's conditional cross-point concerning the viability of its implied partnership theory of liability.

## SINGLE BUSINESS ENTERPRISE

■ Appellants' liability for the Default Judgment was submitted to the jury and decided on just one theory: single business enterprise. In their first issue, appellants argue the trial court erred in denying their motions for directed verdict and for judgment notwithstanding the verdict and in charging the jury as it did, because the single business enterprise theory of liabili-

ty is an improper method for disregarding corporate separateness or piercing the corporate veil. Based on the recent pronouncements of the Texas Supreme Court, we agree.

In *SSP Partners,* the court repeated the list of vehicles it approves "for imposing liability despite the corporate structure" and stressed that the list did not include single business enterprise. 275 S.W.3d at 454 (citing *Castleberry v. Branscum,* 721 S.W.2d 270, 271–72 (Tex.1986)). Next the court set forth the Texas Legislature's "stricter approach to disregarding the corporate structure" in article 2.21 of the Texas Business Corporations Act. *Id.* at 455–56. Having surveyed what it considered the appropriate methods of imposing liability by disregarding corporate structure, the court concluded, "The single business enterprise liability theory is fundamentally inconsistent with the approach taken by the Legislature in article 2.21." *Id.* at 456. The supreme court held the single business enterprise liability theory will not support the imposition of one corporation's obligations on another. *Id.*

Galleria argues it proved more than the single business enterprise theory discussed in *SSP Partners.* Specifically, Galleria stresses it obtained an implicit finding of actual fraud. But the supreme court has invalidated the fundamental theory of corporate liability that Galleria submitted to the jury. *See id.* Because the theory on which Galleria secured its judgment has been rejected by the Texas Supreme Court, the judgment must be reversed. We sustain appellants' first issue.

## IMPLIED PARTNERSHIP

■ Galleria filed its own notice of appeal and included a conditional cross-point. Galleria urged that—if we reversed the jury's verdict on single business enterprise—it was entitled to a new trial on the

issue of implied partnership. Galleria argues the trial court erroneously granted a directed verdict on the implied partnership issue because it produced more than a scintilla of evidence on that theory. A directed verdict is proper if there is no probative evidence raising a material fact dispute on a claim. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.,* 29 S.W.3d 74, 77 (Tex.2000). In reviewing a directed verdict, we consider all of the evidence in a light most favorable to the party against whom the verdict was directed and disregard all contrary evidence and inferences; we give the losing party the benefit of all reasonable inferences created by the evidence. *Coastal Transp. Co., Inc. v. Crown Cent. Petroleum Corp.,* 136 S.W.3d 227, 234 (Tex.2004).

A partnership is "an association of two or more persons to carry on a business for profit as owners." TEX.REV.CIV. STAT. ANN. art 6132b–2.02(a) (Vernon Supp. 2008). We look to the following factors to determine whether persons have created a partnership:

(1) receipt or right to receive a share of profits of the business;

(2) expression of an intent to be partners in the business;

(3) participation or right to participate in control of the business;

(4) sharing or agreeing to share:

(A) losses of the business; or

(B) liability for claims by third parties against the business; and

(5) contributing or agreeing to contribute money or property to the business.

*Id.* art. 6132b–2.03(a). The most important of these factors are sharing profits

and participating in the control of the business. *Id.* Comment of Bar Comm.—1993 ("Traditionally, sharing of profits and of control have been regarded as the most important. They will probably continue to be the most important under this section.").

As to sharing of profits, Galleria argues profits of individual restaurants were "siphoned into" Big Easy Cajun—Management Corporation and Florida Operations Corporation under the guise of management fees and license fees, or royalties. Then, according to Galleria, the siphoned funds were paid out as dividends to the two men who were major shareholders of the various corporations. Even when we consider this evidence in a light most favorable to Galleria and disregard all contrary evidence and inferences, *see Coastal Transport,* 136 S.W.3d at 234, there is no probative evidence of profit sharing. Undisputed testimony in the record established the individual restaurants, including BEC Dallas, received specific administrative services in return for their management fees.[1] These payments were compensation for services rendered and are, therefore, unrelated to the restaurant's profits. *See Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 176 (Tex.1997). And as to the royalties, which individual restaurants paid for use of the corporate marks, the Texas Supreme Court has asserted that entitlement to a royalty based on gross receipts is not profit sharing. *See id.* Our review of the record does not yield a scintilla of evidence that any of the appellants agreed to share profits.

---

1. Mr. Thomas Farmer, a vice-president of Big Easy Cajun Management Corporation, testified that company performed a number of services for individual restaurants in return for the management fees, including: pro-

gramming cash registers; accounting services, including payroll services and tax services; negotiating leases; and processing payments, including payments to vendors, lessors, and taxing entities.

We next address Galleria's argument based upon participation in the control of the business. Galleria argues the Florida Operations Corporation retains control of the Big Easy Cajun intellectual property. It charges that the operations corporation "controls" the amount of license fees to be paid, and the management corporation "controls" the amount of management fees to be paid. These matters represent part of the agreement between operators of an individual restaurant and the other corporate entities. The entity that owns intellectual property safeguards its value, and the entity performing administrative tasks for one business receives payment for those services. Galleria asserts that performing those administrative tasks also represents the corporations' participation in the control of the business. Again, even when we consider this argument in a light most favorable to Galleria and disregard all contrary evidence and inferences, *see Coastal Transport,* 136 S.W.3d at 234, the record shows no evidence of a *sharing* of control in the various businesses.

Nor does the record contain evidence of the remaining partnership factors. The appellant entities did not share losses. The undisputed evidence at trial was that, once BEC Dallas was operating, individual shareholders made capital contributions to keep it running; none of the other corporate entities made such contributions. Finally, one of the majority shareholders of the corporations was asked why he organized his businesses as separate corporations. He responded that he did not want a problem at one restaurant to endanger all of his different ventures. This statement is clearly contrary to any implied agreement to share liabilities for claims by third parties against the business.

We conclude there is no probative evidence raising a material fact dispute on Galleria's claim of implied partnership. *Prudential Ins.,* 29 S.W.3d at 77. The trial court correctly granted the directed verdict on that claim. We overrule Galleria's third cross-point.

### CONCLUSION

Given the resolution of these points, we need not address either party's remaining issues. We reverse the judgment of the trial court, and we render judgment that Galleria take nothing on its claims against appellants.