# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00513-CV

---

### Robert Blankenship and Chris Mashburn, Appellants

### v.

### William Wolfenson, Appellee

---

### FROM THE 335TH DISTRICT COURT OF BASTROP COUNTY
### NO. 688-335, THE HONORABLE CHRISTOPHER DARROW DUGGAN, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Robert Blankenship and Chris Mashburn appeal the trial court's judgment, which held each of them directly liable in damages to William Wolfenson and jointly and severally liable to Wolfenson for the damages otherwise awarded against two business-entity defendants. The judgment was rendered on a mixed jury verdict—although some items of damages were found by the jury, zero-damages findings were made on other requests. Among their several appellate issues, Blankenship and Mashburn contend that the evidence was legally insufficient to support the items of damages awarded against them directly and that the two bases on which Wolfenson relied to hold Blankenship and Mashburn jointly and severally liable for the entity defendants' conduct are unavailing. We agree and reverse the relevant portions of the trial court's judgment.

## BACKGROUND

Wolfenson owns a house in Port Aransas that he rents out for most of each year. He resides full-time in Bastrop County. In August 2017, Hurricane Harvey damaged the house, and Wolfenson signed agreements to repair the house to be rented out again with both (a) Juggernaut Investments, LLC d/b/a Two90 Construction Group and (b) S Two Restoration, LLC. Juggernaut and S Two are affiliated entities, and Blankenship and Mashburn are both officers of Juggernaut and conduct business for S Two.

Despite at least some progress on repairs by late 2017, though both how much progress and the cause of any delays were disputed, the pace of progress led Wolfenson to have a falling out with Blankenship and Mashburn. Wolfenson said that he was cancelling his agreements with Juggernaut and S Two, and he instead contracted with Storm Rehab Group. The house was repaired and rented out again beginning in July 2018.

Juggernaut began this suit by suing Wolfenson and Storm Rehab Group. Wolfenson counterclaimed against Juggernaut and brought in as third-party defendants S Two, Blankenship, and Mashburn. When the trial took place, only Wolfenson's claims against Juggernaut, S Two, Blankenship, and Mashburn remained in the suit.

Trial proceeded on Wolfenson's claims for fraud and violations of the Deceptive Trade Practices-Consumer Protection Act (DTPA), *see* Tex. Bus. & Com. Code § 17.41.[1] The jury returned a mixed verdict. It found for Wolfenson on several items of damages directly against each of the entity defendants and each of Blankenship and Mashburn. The items of damages it

---

[1] Wolfenson pleaded for relief under the DTPA based not only on two items from the Section 17.46(b) "laundry list" and alleged unconscionable actions but also on tie-in statutes from Business and Commerce Code chapters 58 and 601.

found directly against each of Blankenship and Mashburn were $13,500 for lost-profits damages; $25,000 for "lost time" damages; $50,000 for mental anguish sustained in the past; $50,000 for DTPA additional damages; and $100,000 in exemplary damages. It also answered "Yes" to the two questions that Wolfenson intended as the submissions of alter-ego liability against Blankenship and Mashburn. But the jury also returned zero-damages findings on the requests for "out of pocket expenses sustained in the past," "loss of use of Wolfenson's Port Aransas property," and future mental anguish.[2] (Capitalizations changed, and italics removed.)

The court rendered a final judgment in Wolfenson's favor, holding Blankenship and Mashburn each directly liable for amounts in damages matching what the jury found against each individual. The court in its judgment also held each individual directly liable for attorneys' fees, conditional appellate fees, costs, and prejudgment and postjudgment interest. Each individual was also held jointly and severally liable for the entire judgment against Juggernaut and the entire judgment against S Two, apparently based on the alter-ego answers that the jury returned. Juggernaut and S Two were held liable for items of damages and other relief, but neither entity has appealed. Blankenship and Mashburn, however, have.

---

[2] Although "loss of use" of the Port Aransas property was not defined in the jury charge, "loss of use" is often defined as the reasonable rental value of the premises during the time that the property owner is unable to rent the property out. *See Marinecorp Int'l, Ltd. v. Chopper Grp., LLC*, No. 01-14 00707 CV, 2016 WL 1382168, at *10 (Tex. App.—Houston [1st Dist.] Apr. 7, 2016, pet. denied) (mem. op.) (explaining difference between "expenses" and "loss of use" as submitted to jury in DTPA damage question); *cf. Smith v. Baldwin*, 611 S.W.2d 611, 617 (Tex. 1980) (allowing other DTPA damages to be offset by amount of reasonable rental value of house for ten-month period that plaintiff occupied house).

## DISCUSSION

Blankenship and Mashburn's five appellate issues can be divided into two groups. First, Blankenship and Mashburn in one appellate issue complain about their notice of the trial. Second, they in their remaining issues complain about the items of relief awarded against them, both (a) those for which they were held directly liable and (b) those for which Juggernaut and S Two were held directly liable but also for which the two individuals were held jointly and severally liable. We begin with the issues that afford them the greatest relief on appeal. *See Bradleys' Elec., Inc. v. Cigna Lloyds Ins. Co.*, 995 S.W.2d 675, 677 (Tex. 1999) (per curiam).

Those issues are their legal-sufficiency challenges about the items of damages that were awarded against them directly and their challenge to the bases for joint-and-several liability on which they were held liable for Juggernaut's and S Two's conduct. Blankenship and Mashburn's arguments are meritorious—none of the items of damages that were awarded against them directly should have been, neither of the bases for their joint-and-several liability is availing, and thus Wolfenson must take nothing on all requests for relief against Blankenship and Mashburn. We need not reach any other issue in the appeal.[3] *See* Tex. R. App. P. 47.1.

***The evidence was legally insufficient to support the actual damages awarded against Blankenship and Mashburn directly, so Wolfenson must take nothing on his requests that they be held directly liable.***

The trial court in its judgment held Blankenship and Mashburn directly liable for the items of damages found by the jury: lost-profits damages, "lost time" damages, damages for past mental anguish, DTPA additional damages for conduct committed knowingly, and exemplary

---

[3] Our opinion and judgment here do not disturb the portions of the judgment awarding Wolfenson relief against Juggernaut and S Two. Those parties did not appeal, and Blankenship and Mashburn present no argument that could be maintained on behalf of the two entity defendants.

4

damages. Blankenship and Mashburn in one of their appellate issues contend that the evidence was legally insufficient to support these damages and associated causation findings.

To challenge the legal sufficiency of the evidence to support a finding on which an adverse party bore the burden of proof, the appellant must show that the record contains no evidence to support the finding. *CIM Mgmt. Grp. v. Burnett*, No. 03-21-00229-CV, 2022 WL 3567782, at *2 (Tex. App.—Austin Aug. 19, 2022, no pet.) (mem. op.). In conducting our review, we credit evidence that supports the finding if reasonable jurors could have credited it and disregard contrary evidence unless reasonable jurors could not have disregarded it. *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006). We consider the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor. *Goldstein v. Mortenson*, 113 S.W.3d 769, 775 (Tex. App.—Austin 2003, no pet.). The evidence is legally insufficient to support a finding when there is a complete absence of evidence of a vital fact, the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, the evidence offered to prove a vital fact is no more than a scintilla, or the evidence conclusively establishes the opposite of a vital fact. *Seger v. Yorkshire Ins. Co.*, 503 S.W.3d 388, 407 (Tex. 2016).

### Lost profits

Blankenship and Mashburn first attack the award of lost profits. The jury found that each individual was directly liable to Wolfenson for $13,500 in "Lost Profits sustained from the inability to rent out Plaintiff, William Wolfenson's Port Aransas property." The evidence showed that after 2017's Hurricane Harvey, the property was not rented out again until July 2018, missing portions of the year 2018 that Wolfenson said were prime rental times, May and June.

5

Courts may award lost-profits damages only if the claimant proves with reasonable certainty both the fact of damages and the amount of damages. *American Midstream (Ala. Intrastate), LLC v. Rainbow Energy Mktg. Corp.*, 714 S.W.3d 572, 583 (Tex. 2025). "As a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained." *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992). "Although legally sufficient evidence might otherwise establish a . . . tort permitting an award of lost profits, 'profits not susceptible of being established by proof to that degree of certainty which the law demands cannot be recovered as damages.'" *Horizon Health Corp. v. Acadia Healthcare Co.*, 520 S.W.3d 848, 860 (Tex. 2017) (internal quotation omitted) (quoting *Phillips v. Carlton Energy Grp.*, 475 S.W.3d 265, 280 (Tex. 2015)). "The law is wisely skeptical of claims of lost profits from untested ventures or in unpredictable circumstances, which in reality are little more than wishful thinking." *Phillips*, 475 S.W.3d at 280.

To carry their burden, lost-profits claimants must show "*profits*—the net of income or revenues from a business activity less the expenses incurred in that activity." *Mid Continent Lift & Equip., LLC v. J. McNeill Pilot Car Serv.*, 537 S.W.3d 660, 665 (Tex. App.—Austin 2017, no pet.). The relevant figures, including both revenues and expenses, and supporting assumptions and analysis "must be predicated on one complete calculation." *See Holt Atherton Indus.*, 835 S.W.2d at 85; *accord ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 878 (Tex. 2010).

Expenses properly included in the calculation have included operational expenses, employee wages and benefits, food and beverage costs, insurance premiums, taxes, utilities, rent or mortgage payments, and interest paid or payable on a bank loan taken out to fund the business. *See Ha Duong Nhu v. Hunan Ranch Corp.*, No. 03-14-00821-CV, 2015 WL 8593425, at *2 (Tex. App.—Austin Dec. 11, 2015, no pet.) (mem. op.); *Kerrville HRH, Inc. v. City of Kerrville*, 803

S.W.2d 377, 386 (Tex. App.—San Antonio 1990, writ denied). More generally, expenses to be considered should be those that, "broadly speaking, . . . would have been attributable to" the lost business activity. *See Springs Window Fashions Div., Inc. v. Blind Maker, Inc.*, 184 S.W.3d 840, 884 (Tex. App.—Austin 2006, pet. granted, judgm't vacated w.r.m.); *accord MJAH Holdings, LLC v. Henson*, No. 03-18-00012-CV, 2019 WL 1413282, at *5 (Tex. App.—Austin Mar. 29, 2019, no pet.) (mem. op.); *see also Barton v. Resort Dev. Lat. Am., Inc.*, 413 S.W.3d 232, 243 (Tex. App.—Dallas 2013, pet. denied) ("the expenses incurred in carrying on the business"); *Kerrville HRH*, 803 S.W.2d at 386 ("the cost of obtaining" the relevant "gross pecuniary gains").

Thus, if claimants fail to adduce evidence of relevant expenses, then their evidence is legally insufficient to support any award. *See Tyler Title Co. v. Cowley*, No. 12-18-00043-CV, 2019 WL 1760105, at *7 (Tex. App.—Tyler Apr. 10, 2019, no pet.) (mem. op.); *Barton*, 413 S.W.3d at 243, 245. And similarly, a business that is shown not to make a profit cannot without more prove any lost profits: "a historically unprofitable business must produce 'some other objective data, such as future contracts, from which lost profits can be calculated with reasonable certainty.'" *M & A Tech., Inc. v. iValue Grp.*, 295 S.W.3d 356, 366 (Tex. App.—El Paso 2009, pet. denied) (quoting *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 505 (Tex. 2001)).

Wolfenson adduced evidence of his "complete calculation," *see Holt Atherton Indus.*, 835 S.W.2d at 85, by offering an exhibit of documents attributable to the Port Aransas house taken from several years of his tax returns and by describing the exhibit in his testimony. The tax years represented are 2015 through 2019. The 2019 document, a Form 1099-MISC, provides no information about expenses, and that year in any event is not a year during which any profits were lost, according to Wolfenson. But the 2015, 2016, and 2017 documents, Schedule Es to Form 1040s, all show that Wolfenson's business in renting out the Port Aransas house was *never*

profitable. On those documents, Wolfenson has reported for the business of renting out the Port Aransas house both the "rents received" and the "expenses," both of which result in the business's "income or loss from rental real estate." (Capitalizations changed.) The documents themselves show that the business's attributable expenses outpaced its pecuniary gains every year. Having conclusively shown his business to be unprofitable from 2015 to 2017, Wolfenson needed to adduce evidence of "some other objective data, such as future contracts, from which lost profits" for 2018 could "be calculated with reasonable certainty." *See M & A Tech.*, 295 S.W.3d at 366 (quoting *Helena Chem.*, 47 S.W.3d at 505). He did not do so—he offered nothing to show that the revenues that he allegedly missed out on in 2018 and the expenses that he avoided by not renting the house out reasonably would have resulted in a profit for the business in that year. This is not a case in which the lost-profits claimant adduced evidence of his relevant expenses aside from what his tax documents showed. *See, e.g.*, *Bullet Trap, L.L.C. v. Waterproof Positive, LLC*, No. 05-18-00529-CV, 2019 WL 3543579, at \*4 (Tex. App.—Dallas Aug. 5, 2019, pet. denied) (mem. op.). Wolfenson's only testimony about the tax documents parroted their contents, and his other testimony about lost profits merely explained his lost revenues, rather than his lost revenues-minus-expenses. The tax documents therefore showed the "complete calculation." *See Holt Atherton Indus.*, 835 S.W.2d at 85.

Because the evidence of Wolfenson's lost-profits calculation showed his business had been unprofitable and did not give any objective data from which a reasonable juror could conclude that 2018 revenues would make the business profitable for the first time, the evidence was legally insufficient to support any lost-profits damages award. We thus sustain Blankenship and Mashburn's issue on this topic, reverse the portions of the judgment that award Wolfenson lost-profits damages directly from Blankenship and Mashburn, and render judgment that

Wolfenson take nothing on his request for lost-profits damages against those two parties. *See Horizon Health*, 520 S.W.3d at 866; *Mid Continent Life & Equip.*, 537 S.W.3d at 677.

*"Lost time"*

The next item of damages that Blankenship and Mashburn challenge is what the charge calls "Lost Time" and describes as "[t]he reasonable value of the time spent by Plaintiff, William Wolfenson correcting or attempting to correct the problems with the Port Aransas property." The jury found $25,000 for these damages, against each of Blankenship and Mashburn.

Yet the record lacks any evidence of how much time Wolfenson spent on these efforts or what the value of his time reasonably should have been. His defense on appeal of the legal sufficiency of the evidence to support these damages is threadbare: "Wolfenson provided direct evidence of lost time in the form of testimony for several hours regarding his dealings with Blankenship and Mashburn. 3RR24 & 3RR83. This direct evidence testimonial regarding mental anguish [sic] is more than a scintilla of evidence to support the jury's finding, thus evidence is legally sufficient."[4] The most that the referenced portions of Wolfenson's testimony support is that he spent some undetermined amount of time communicating with Blankenship and Mashburn. And even that problem aside, no evidence shows the reasonable value of Wolfenson's time. These gaps in the evidence are perhaps why during closing argument, Wolfenson's counsel struggled to articulate any reasonable, measurable standard for the award:

> Lost time. That's a tough one. You know, he spent a lot of time down there. And that's up to you guys to find that one, as with mental anguish sustained in the past

---

[4] The briefing does indeed refer to the mental-anguish award in this spot even though this text is taken from the lost-time portion of the brief and not from the mental-anguish portion.

9

and future. That's up for you guys to decide what you feel is appropriate, if you do feel anything is appropriate.

Wolfenson needed to adduce evidence showing a reasonable basis for determining his alleged lost-time damages, but he did not do so, leaving the jury simply to "pick a number" for this blank in the jury charge. *See Vance v. My Apartment Steak House of San Antonio, Inc.*, 677 S.W.2d 480, 484 (Tex. 1984) (requiring plaintiff to adduce evidence of "reasonable basis for determining his loss"); *Saenz v. Fidelity & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996) (stating for noneconomic damages that "[j]uries cannot simply pick a number and put it in the blank"); *Gregory v. Chohan*, 670 S.W.3d 546, 551, 556–57 (Tex. 2023) (plurality op.) (explaining that for all items of compensatory damages, whether economic or noneconomic, damages must be based on evidence rationally connecting the amount to what is necessary to place plaintiff in position in which he would have been absent defendant's tortious act). We thus sustain Blankenship and Mashburn's issue on this topic, reverse the portions of the judgment that award Wolfenson lost-time damages directly from Blankenship and Mashburn, and render judgment that Wolfenson take nothing on his request for lost-time damages against those two parties.

*Mental anguish*

Blankenship and Mashburn also challenge the jury's findings of $50,000 against each of them for "mental anguish sustained in the past." For the evidence to be legally sufficient to support mental-anguish damages, there must be "either 'direct evidence of the nature, duration, or severity of [plaintiff's] anguish, thus establishing a substantial disruption in the plaintiff's daily routine,' or other evidence of 'a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger.'" *See Lubbock County v. Strube*, 953 S.W.2d 847, 857 (Tex. App.—Austin 1997, pet. denied) (quoting *Saenz*, 925 S.W.2d

10

at 614).  The full extent of the evidence on this issue is the following from Wolfenson's direct-examination testimony:

Q. So after you e-mailed [Juggernaut] saying that you were cancelling the contract with them, did [Juggernaut] respond to you in any way?

A. Yes.  I got a very aggressive e-mail from Robert Blankenship, CEO of [Juggernaut], who told us any delays on fixing our house was our fault.  That we had delayed them from starting the job by going to Las Vegas on our business trip. And that he was going to sue us.  And that he would sue any company that we hired to do the job.

Q. Did [Juggernaut], in fact, sue you and the company you hired?

A. I'm sorry what?

Q. Did [Juggernaut], in fact, sue you and the company you hired?

A. Yeah.  He served papers actually over at the house where Storm Rehab Group was doing the work on our house and gave them notice that they were—that we were being sued on January 22nd.  They got—that letter was dated.  And that's when they were served—or we were all served.

 . . . .

Q. Mr. Wolfenson, when we took a recess, we were—you had just answered a question I asked about [Juggernaut].  Did they sue you and the company you hired?

A. Is that the question?

Q. Yes.  I'm repeating the question.

A. Okay.  Say it again, please.

Q. Did [Juggernaut] sue you and the company you hired?

A. Yes, they did.

Q. When did they sue you?

A. It was actually January 22nd, 2018.

Q. And what impact did the [Juggernaut] lawsuit have on you?

11

A. Well, it was horribly upsetting, first of all, to my wife and I. We have never been sued for anything. We didn't know how to even go about responding to it at that time. Thankfully, [Storm Rehab Group], the new contractor, had just finished putting the new roof on the house.

Wolfenson then testified that Juggernaut's suit caused Storm Rehab Group to delay its restoration work for months, resulting in lost rents.

Wolfenson on appeal again offers only a threadbare defense of the legal sufficiency of the evidence to support this award, using wording reminiscent of his defense of the lost-time award: "Wolfenson provided direct evidence of mental anguish in the form of testimony for several hours regarding his dealings with Blankenship and Mashburn. 3RR24 & 3RR83. This direct evidence testimonial regarding mental anguish is more than a scintilla of evidence to support the jury's finding, thus [the] evidence is legally sufficient." The testimony appearing on the two referenced pages of the reporter's record is irrelevant to the mental-anguish award.

The evidence was legally insufficient to support any mental-anguish award. The Supreme Court of Texas has reversed awards of mental-anguish damages even in suits whose evidence provided more than this one does about the damages suffered. *See, e.g.*, *Gunn Infiniti, Inc. v. O'Byrne*, 996 S.W.2d 854, 860–61 (Tex. 1999) ("a constant mental sensation of pain or a rude awakening"; "a nightmare every time I see the car"; "severe disappointment both in myself and the dealership, my faith to ever do business again"; public humiliation; getting grief and ridicule from friends; and embarrassment); *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444–45 (Tex. 1995) ("very disturbed," "upsetting" feeling, "friction between" plaintiff couple caused by defendants' alleged wrongdoing, "upset" at change in lifestyle, anger, frustration, vexation). Wolfenson's having been "horribly upset[]" is not enough. *See Lubbock County*, 953 S.W.2d at 857. This record wholly lacks the kinds of evidence that we have looked to elsewhere to uphold

12

mental-anguish awards, for example, physical manifestations. *See, e.g.*, *New Horizons Ranch & Ctr., Inc. v. Grebe*, No. 03-23-00525-CV, 2025 WL 567841, at \*10 (Tex. App.—Austin Feb. 21, 2025, no pet.) (mem. op.) (physical manifestations of stress and anxiety, presenting as breathing trouble, heart-racing, insomnia, nightmares, hives, panic attacks, dizziness, personality changes, weight loss, and depression observed by others). We thus sustain Blankenship and Mashburn's issue on this topic, reverse the portions of the judgment that award Wolfenson mental-anguish damages directly from Blankenship and Mashburn, and render judgment that Wolfenson take nothing on his request for mental-anguish damages against those two parties.

*Remaining items of damages and attorneys' fees*

The result of our analysis so far is that the only items of damages awarded by the jury against Blankenship or Mashburn that remain are DTPA additional damages and exemplary damages. Neither award can survive as a matter of direct liability against Blankenship or Mashburn because of the combination of our analysis thus far and the jury's zero-damages findings on all the other requested items of damages.

DTPA additional damages here are limited to "three times the amount of economic damages" found by the factfinder. *See* Tex. Bus. & Com. Code § 17.50(b)(1), (e). Because Wolfenson must take nothing on his requests for lost-profits and lost-time damages, the only remaining economic damages on which this DTPA-additional-damages award could be based are the jury's findings of zero damages for out-of-pocket expenses sustained in the past and zero damages for loss of use of the Port Aransas property. Therefore, the additional-damages award must be reversed and judgment rendered that Wolfenson take nothing on his request for those

13

damages.[5] *See Schlein v. Griffin*, No. 01-14-00799-CV, 2016 WL 1456193, at \*23 (Tex. App.—Houston [1st Dist.] Apr. 12, 2016, pet. denied) (mem. op.); *Household Fin. Corp. III v. DTND Sierra Invs., LLC*, No. 04-13-00033-CV, 2013 WL 5948899, at \*12 (Tex. App.—San Antonio Nov. 6, 2013, no pet.) (mem. op.).

The only item of damages left awarded directly against Blankenship and Mashburn is exemplary damages. That direct award cannot stand because there must be some underlying damages recovery for exemplary damages to be appropriate. *See* Tex. Civ. Prac. & Rem. Code §§ 41.002, 41.004; *Doubleday & Co. v. Rogers*, 674 S.W.2d 751, 753–54 (Tex. 1984); *Hung Tan Phan v. An Dinh Le*, 426 S.W.3d 786, 795 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

Blankenship and Mashburn also challenge the awards of attorneys' fees and conditional appellate fees made directly against them. Those awards as against Blankenship and Mashburn cannot stand because Wolfenson otherwise lacks any recovery against Blankenship and Mashburn directly. *See Morton v. Hung Nguyen*, 412 S.W.3d 506, 512 (Tex. 2013) (instructing that awards of attorneys' fees should be reversed on appeal when same appeal otherwise leaves fees claimant without any viable claim to support fees award).

In all, we sustain the relevant portions of Blankenship and Mashburn's issues seeking to overturn their direct liability to Wolfenson. We reverse the portions of the judgment holding them directly liable and render judgment that Wolfenson take nothing on his direct-liability claims for relief against Blankenship and Mashburn.

---

[5] Even if Wolfenson's claims under the tie-in statutes are eligible for the treatment provided for by Business and Commerce Code section 17.50(h), there are still no damages to treble because the jury found zero damages for future mental anguish and Wolfenson must take nothing on his request for past mental anguish.

***Neither basis for holding Blankenship and Mashburn jointly and several liable is availing.***

Blankenship and Mashburn in one of their remaining appellate issues contend that it was error for any judgment to be rendered against them holding them liable for any damages awarded against either Juggernaut or S Two. Wolfenson undisputedly based his request for judgment against Blankenship and Mashburn holding each of them jointly and severally liable for the conduct of the entity defendants on two theories—one that he pleaded as "single business enterprise liability" and the other, "alter ego" liability, a theory for disregarding Juggernaut's and S Two's LLC-entity form, referred to as a veil-piercing theory, *see Plan B Holdings, LLC v. RSLLP*, 681 S.W.3d 443, 458 (Tex. App.—Austin 2023, no pet.).[6]

As to "single business enterprise," the Supreme Court of Texas has rejected as nonviable the theory that Wolfenson pleaded. *See SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 450–56 (Tex. 2008). That theory therefore cannot support the portions of the judgment holding Blankenship and Mashburn liable for each of Juggernaut's and S Two's liability in the suit. *See Shook v. Walden*, 368 S.W.3d 604, 611 (Tex. App.—Austin 2012, pet. denied).

---

[6] The law that has developed on piercing the *corporate* veil, under what is now Business Organizations Code sections 21.223 through 21.226, has at least in some way been extended to LLCs. *See* Tex. Bus. Orgs. Code § 101.002(a). Lurking within Section 101.002(a), however, is a "potentially . . . vexing question"—a question not raised by this appeal. *See Key v. Richards*, No. 03-14-00116-CV, 2016 WL 240773, at *5 (Tex. App.—Austin Jan. 13, 2016, no pet.) (Pemberton, J., concurring) (mem. op.). Because the extension of corporate-veil-piercing theories to LLCs is expressly "[s]ubject to Section 101.114," and because Section 101.114 seems to prohibit LLC members or managers from being liable for their LLC's liabilities only except as specifically provided for by the LLC's company agreement, there is an open question about the effect of Section 101.114 on whether the full body of veil-piercing law applies to LLCs. *See, e.g.*, *Keyes v. Weller*, 692 S.W.3d 274, 286 n.14 (Tex. 2024) (Bland, J., concurring) (flagging LLC officers' failure to invoke or analyze Section 101.114); *Key*, 2016 WL 240773, at *5 (Pemberton, J., concurring). Blankenship and Mashburn have not invoked or analyzed Section 101.114.

As for alter ego, Blankenship and Mashburn argue both that Wolfenson failed to secure the necessary jury findings and that the evidence was legally insufficient to support the theory. Wolfenson bore the burden either to secure jury findings as necessary to support his theory or to adduce conclusive evidence on all its elements. *See Castleberry v. Branscum*, 721 S.W.2d 270, 277 (Tex. 1986) (liability under alter-ego theory is question for jury), *superseded by statute on other grounds, as recognized in SSP Partners*, 275 S.W.3d at 455; *Shook*, 368 S.W.3d at 615 (plaintiff's burden of either jury findings or conclusive evidence for alter-ego theory).

Concerning jury findings, "[e]ven if another legal theory was argued to the jury and explained by the lawyers in argument, we are bound by the instructions given to the jury and presume that the jury followed those instructions." *Seger*, 503 S.W.3d at 407. "Statements from lawyers as to the law do not take the place of instructions from the judge as to the law" as "[i]t is the trial court's prerogative and duty to instruct the jury on the applicable law." *Id.* (quoting *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 862 (Tex. 2009)). "[A] court cannot ignore a charge's plain, commonsense meaning merely because an unreasonable interpretation would better align with the judgment." *Memorial Hermann Health Sys. v. Gomez*, 649 S.W.3d 415, 424 (Tex. 2022).

Here, the charge given to the jury submitted—or attempted to submit—Wolfenson's alter-ego issues against each of Blankenship and Mashburn in two sets of questions and instructions using virtually identical language. In each, the jury was asked and instructed:

> Is *Juggernaut . . .* responsible for the conduct of [the respective appellant here, Blankenship or Mashburn]?
>
>> *Juggernaut . . .* is "responsible" for the conduct of [the respective appellant], if:

16

[(1) the respective appellant] was organized and operated as a mere tool or business conduit *of Juggernaut* . . . ;

[(2)] there was such unity between [him] and Juggernaut . . . that the separateness of [him] and Juggernaut had ceased and holding only [him] responsible would result in injustice; and

[(3)] *Juggernaut* caused [him] to be used for the purpose of perpetrating and did perpetrate an actual fraud on . . . Wolfenson primarily for the direct personal benefit of Juggernaut. . . .

. . . .

Answer "Yes" or "No." Answer: _____

(Emphases added, and formatting altered.) *See Plan B Holdings*, 681 S.W.3d at 461 & n.7 (explaining that the elements of an alter-ego theory are "(1) that the entity on which [plaintiff] seeks to impose liability is the alter ego of the debtor, and (2) that the corporate fiction was used for an illegitimate purpose, that is, to perpetrate an actual fraud on the plaintiff for the defendant's direct personal benefit" (quoting *U.S. KingKing, LLC v. Precision Energy Servs., Inc.*, 555 S.W.3d 200, 213–14 (Tex. App.—Houston [1st Dist.] 2018, no pet.))); Tex. Bus. Orgs. Code § 21.223(b); *see also Menetti v. Chavers*, 974 S.W.2d 168, 173–75 (Tex. App.—San Antonio 1998, no pet.) (alter-ego elements apply in suits involving fraud and DTPA claims like those here); *accord Plas-Tex, Inc. v. Jones*, No. 03-99-00286-CV, 2000 WL 632677, at *4 n.9 (Tex. App.—Austin May 18, 2000, pet. denied) (not designated for publication).

Blankenship and Mashburn argue that these questions and instructions inverted what Wolfenson wanted the jury to find—that the questions asked whether *Juggernaut* should be liable on an alter-ego theory. For example, Blankenship and Mashburn note that the questions asked the jury about the nonsensical proposition of whether a natural person had been "organized" and "operated" as a tool of Juggernaut's. *See Castleberry*, 721 S.W.2d at 272 (describing alter-ego

theory as "where *a corporation* is organized and operated as a mere tool or business conduit of another corporation" (emphasis added)).

We agree with Blankenship and Mashburn. Wolfenson could have judgment on his alter-ego theories against Blankenship and Mashburn only by, as we said, either securing the necessary jury findings or adducing conclusive evidence on the theory's elements. *See id.* at 277; *Shook*, 368 S.W.3d at 615. The questions asked of the jury here cannot support a judgment holding *Blankenship or Mashburn* liable for alter-ego liability.[7] *See Lucas v. Texas Indus., Inc.*, 696 S.W.2d 372, 376, 377 (Tex. 1984) (reversing and rendering take-nothing judgment on alter-ego theory when jury question "did not properly state the law, and did not serve as a proper predicate to disregard [entity]'s corporate existence"); *see also Lyons v. Ortego*, No. 01-17-00092-CV, 2018 WL 4014218, at *6–7, *8 (Tex. App.—Houston [1st Dist.] Aug. 23, 2018, pet. denied) (mem. op.) (reversing and rendering take-nothing judgment on claim absent necessary jury finding and despite favorable jury findings on other, irrelevant issues); *accord Enterprise Prods. Partners, L.P. v. Energy Transfer Partners, L.P.*, 529 S.W.3d 531, 545 (Tex. App.—Dallas 2017), *aff'd*, 593 S.W.3d 732 (Tex. 2020). In addition, the jury charge asked no questions at all on any alter-ego theory as between S Two and Blankenship or S Two and Mashburn. Therefore, Wolfenson, lacking the necessary jury findings, needed to have adduced conclusive evidence on both proper alter-ego elements. *See Plan B Holdings*, 681 S.W.3d at 461 & n.7 (two elements).

---

[7] Nor do they support deemed findings for Wolfenson on the legally appropriate elements of alter ego as against Blankenship or Mashburn—they fall short of giving Blankenship and Mashburn notice of the possibility of deemed findings on an alter-ego theory *against them. See Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515–16 (Tex. 1998); *Gold Kist, Inc. v. Carr*, 886 S.W.2d 425, 431 (Tex. App.—Eastland 1994, writ denied), *cited with approval by Johnson & Higgins of Tex.*, 962 S.W.2d at 516.

18

As to that issue, Blankenship and Mashburn argue on appeal that, much less than adducing conclusive evidence, Wolfenson failed to adduce legally sufficient evidence to support his alter-ego theory. We will review the evidence under the alter-ego element that Juggernaut is the alter ego of Blankenship or of Mashburn, *see id.*, because that review will dispose of this issue, *see* Tex. R. App. P. 47.1.

That element can be assessed using factors like whether (1) the entity-separateness fiction was used as a means of perpetrating a fraud, (2) the entity was organized and operated as a mere tool or business conduit of another, (3) the entity-separateness fiction was resorted to as a means of evading an existing legal obligation, (4) the fiction was employed to achieve or perpetrate monopoly, (5) the fiction was used to circumvent a statute, and (6) the fiction was relied on as a protection of crime or to justify wrong. *SSP Partners*, 275 S.W.3d at 454–55. Whether the fiction was used as a means of perpetrating a fraud involves considering "whether the use of limited liability was illegitimate." *See Plan B Holdings*, 681 S.W.3d at 463. For the reasons below, we conclude that the evidence was legally insufficient to support any finding that Juggernaut was Blankenship's alter ego or that it was Mashburn's. *See Seger*, 503 S.W.3d at 407 (circumstances in which evidence is legally insufficient).

Wolfenson, for his evidence on this issue, directs us to 13 of his trial exhibits.[8] The exhibits are: agreements between Juggernaut and Wolfenson signed by Wolfenson; an agreement between S Two and Wolfenson signed both by Wolfenson and by Mashburn as S Two's president;

---

[8] Wolfenson's argument on appeal defending the legal sufficiency of the evidence to support alter ego here is limited to these two sentences and record citation: "Wolfenson provided direct evidence of the vicarious liability issue in the form of direct testimony and numerous documents. 5RR PX3-12 & PX18-20. This direct evidence regarding vicarious liability questions is more than a scintilla of evidence to support the jury's finding, thus evidence is legally sufficient."

19

a check from Wolfenson whose line "Pay to the Order of" he filled in with both S Two's and Juggernaut's names; an email to Wolfenson from Juggernaut personnel copying Mashburn, whose email address is shown with a Juggernaut domain name, and explaining that payments should be made to "S two Restoration, LLC/two90 Construction," which aligns with how the entity names are used in the email sender's signature block; S Two's scope-of-work document for the restoration of Wolfenson's house, which he had discussed at a meeting with Blankenship and Mashburn; an email from Wolfenson to Mashburn urging that the restoration work be carried out more quickly; an email from Blankenship, using a Juggernaut domain name and signature block and copying Mashburn, blaming Wolfenson for the delays in the restoration work; Mashburn's and Blankenship's business cards, showing their officer status with Juggernaut; an email from Mashburn to Wolfenson identifying S Two as "part of two90 Construction Group"; a declaration made under penalty of perjury by Blankenship from this suit authenticating certain documents for purposes of summary-judgment practice; and filings with the office of the Texas Secretary of State concerning Juggernaut and S Two.

The context for alter-ego law in Texas is that entity separateness is the rule and alter-ego veil-piercing merely a rare exception and encompasses associated norms of business conduct. "A bedrock principle of corporate law is that an individual can incorporate a business and thereby normally shield himself from personal liability for the corporation's contractual obligations. Avoidance of personal liability is not only sanctioned by the law; it is an essential reason that entrepreneurs . . . choose to incorporate." *Plan B Holdings*, 681 S.W.3d at 458 (quoting *Willis v. Donnelly*, 199 S.W.3d 262, 271 (Tex. 2006)). So it has long been that "disregard of the 'legal fiction of corporate entity' is 'an exception to the general rule which forbids disregarding corporate existence.'" *Lucas*, 696 S.W.2d at 374 (quoting *First Nat'l Bank in Canyon*

20

*v. Gamble*, 132 S.W.2d 100, 103 (Tex. [Comm'n Op.] 1939)). Veil-piercing's intended rarity means that, generally, alter ego will not apply to disregard the corporate form absent *exceptional* circumstances. *U.S. KingKing*, 555 S.W.3d at 214.

Building on these views as foundation, Texas courts have recognized that many ways that businesses operate do not inherently violate alter-ego law. Businesses may "shar[e] . . . names, offices, accounting, employees, services, and finances" and "may coordinate their activities," and none of these acts is "abusive or unjust . . . in the abstract." *SSP Partners*, 275 S.W.3d at 454. "Creation of affiliated corporations to limit liability while pursuing common goals lies firmly within the law and is commonplace." *Id.* at 455. Businesses may operate using "centralized control, mutual purposes, and shared finances" and not, without more, trigger alter-ego liability. *See id.*; *see also Lucas*, 696 S.W.2d at 374 ("There must be something more than mere unity of financial interest, ownership and control for a court to treat the subsidiary as the alter ego of the parent and make the parent liable for the subsidiary's tort." (italics removed)). And they may share some or even all corporate directors, file consolidated income-tax returns, share a corporate logo, and conduct business between each other and still not be alter egos of each other. *See Lucas*, 696 S.W.2d at 376.

As a result of all these considerations, for the plaintiff seeking to prove an alter-ego theory, showing that an LLC has a sole owner who has complete control over the entity is not enough to show that the LLC and owner are alter egos. *See Doyle v. Kontemporary Builders, Inc.*, 370 S.W.3d 448, 458 (Tex. App.—Dallas 2012, pet. denied). Even less probative is an individual's mere "standing as an officer, director, or majority shareholder"—proving such a status of an individual "is, in and of itself, insufficient to support a finding of alter ego." *Galvan v. Leake*, No. 03-15-00376-CV, 2016 WL 4506164, at *4 (Tex. App.—Austin Aug. 25, 2016, no pet.)

(mem. op.). Showing that an LLC's owners compensate themselves by owner's draws from the LLC rather than by salary is not enough. *See Penhollow Custom Homes, LLC v. Kim*, 320 S.W.3d 366, 374 (Tex. App.—El Paso 2010, no pet.). Showing that an LLC member often withdrew funds from the LLC and used them for another business's purposes, unrelated to the LLC, is not enough. *See Helmer v. Rusco Operating, LLC*, No. 03-21-00148-CV, 2022 WL 963236, at *6 (Tex. App.—Austin Mar. 31, 2022, no pet.) (mem. op.).

By contrast, as proof of alter ego, considerations include: (1) the payment of alleged corporate debts with personal checks or other commingling of funds, (2) representations that the individual will financially back the corporation, (3) the diversion of company profits to the individual for his personal use, (4) inadequate capitalization, and (5) other failure to keep corporate and personal assets separate. *Galvan*, 2016 WL 4506164, at *4; *Penhollow Custom Homes*, 320 S.W.3d at 372. The common pattern of alter-ego entities is that their revenues are siphoned off, much of their assets are sold off, and someone hinders their ongoing business and ability to pay off debts and that then a new business starts up that is basically a continuation of the old with many of the same owners, officers, and directors. *Castleberry*, 721 S.W.2d at 275.

Here, there is no evidence under alter ego's first element of the kind of exceptional business conduct that would trigger alter-ego liability. The emails and other communications show Blankenship or Mashburn or others acting on behalf of Juggernaut or of S Two, and that is to be expected because entities act ultimately only through the acts of natural persons. *See City of Denton v. Grim*, 694 S.W.3d 210, 216 n.5 (Tex. 2024). The communications show Juggernaut, S Two, Blankenship, and Mashburn sharing names, employees, services, and finances (like the check from Wolfenson) and coordinating activities, and none of this is "abusive or unjust . . . in the abstract." *See SSP Partners*, 275 S.W.3d at 454. The same is true for the agreements that

22

Wolfenson signed, whether with Juggernaut as counterparty or with S Two. There is no evidence of any efforts by Blankenship or Mashburn to take most of the assets of Juggernaut or of S Two for themselves, that the individuals misused any of the entities' assets for personal use, that personal and entity assets were commingled, or that assets were removed from the entities so that they could not pay their obligations. *See Galvan*, 2016 WL 4506164, at *4 (relevant considerations); *Penhollow Custom Homes*, 320 S.W.3d at 372 (same). The record, lacking as it is in evidence of the level of unity required or of evidence that either Juggernaut or S Two was a "mere tool" rather than an entity operated like most entities are, resembles those in *Penhollow Custom Homes*, *see* 320 S.W.3d at 373–74, and *Doyle*, *see* 370 S.W.3d at 458.[9] Of the evidence considered elsewhere to be relevant but that is lacking here is evidence:

- that assets were shifted at the target defendant's direction out of the entity to serve others' immediate needs or that the entity was never repaid for funds taken from it, *see Plan B Holdings*, 681 S.W.3d at 462;

- that the entity had no assets because they were all being funneled to the owner or that the owner was the entity's landlord, *see Sparks v. Booth*, 232 S.W.3d 853, 869 (Tex. App.—Dallas 2007, no pet.);

- that for years all the entity's assets were distributed to its owners, that the owner took a loan from the entity without repaying, or that the entity was dissolved shortly after receiving a demand letter incident to a forthcoming lawsuit without funds being set aside to pay the obligation that would be the subject of the suit, *see Latham v. Burgher*, 320 S.W.3d 602, 609–10 (Tex. App.—Dallas 2010, no pet.); or

- that entity debts were paid with the target defendant's personal checks, that the target defendant promised to financially back the entity, that the target defendant diverted entity funds for his personal use, that the entity was inadequately

---

[9] The record here contains even less to show purported alter-ego status than did the record in *Menetti v. Chavers*, where evidence of careless bookkeeping, little effort to preserve the corporate fiction, shoddy workmanship, and individuals enjoying tax privileges by living off the entity's funds still was not exceptional enough to justify veil-piercing. *See* 974 S.W.2d 168, 175–76 (Tex. App.—San Antonio 1998, no pet.).

capitalized, or that entity and individual assets were not kept separate, *see Nichols v. Tseng Hsiang Lin*, 282 S.W.3d 743, 749 (Tex. App.—Dallas 2009, no pet.).

In all, we conclude that the evidence was legally insufficient to support any findings that Juggernaut was Blankenship's alter ego, that Juggernaut was Mashburn's, that S Two was Blankenship's alter ego, or that S Two was Mashburn's. We thus sustain the appellate issue about Wolfenson's alter-ego theories, reverse the portions of the trial court's judgment holding Blankenship and Mashburn jointly and severally liable for the liability of Juggernaut and for the liability of S Two, and render judgment that Wolfenson take nothing on his requests for joint-and-several liability against Blankenship and Mashburn.

## CONCLUSION

There is no claim or theory left by which Wolfenson could have judgment against Blankenship and Mashburn. We reverse the portions of the trial court's judgment holding them liable and render judgment that Wolfenson take nothing against them. We need reach no other issue. *See* Tex. R. App. P. 47.1.

_____
Chari L. Kelly, Justice

Before Justices Triana, Kelly, and Crump

Reversed and Rendered in Part

Filed:   August 28, 2025